# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| BENEFICIAL FINANCIAL I INC., successor by merger to Beneficial Oklahoma, Inc., | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 14-CV-414-TCK-FHM |
| BILLY R. CRAVENS, aka Billy Ray Cravens, deceased; CAROLYN I. CRAVENS, aka Carolyn Ilene Cravens; SPOUSE, if any, of Carolyn Cravens; JOHN DOE, occupant; GE MONEY BANK; CAPITAL ONE BANK (USA), N.A.; PINNFUND, USA; and UNKNOWN HEIRS, SUCCESSORS, AND ASSIGNS OF BILLY R. CRAVENS, deceased; | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| CAROLYN I. CRAVENS, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| vs. | ) ) | |
| AMERICAN SECURITY INSURANCE COMPANY; ASSURANT, INC.; HSBC NORTH AMERICA HOLDINGS, INC.; HSBC FINANCE CORPORATION; and HSBC HOLDINGS, PLC; | ) ) ) ) ) ) ) ) | |
| Third-Party Defendants. | ) | |

**OPINION AND ORDER**

Before the Court is the Motion to Compel Arbitration and Stay Certain Proceedings ("Motion to Compel Arbitration") (Doc. 41) filed by: (1) Plaintiff/Counterclaim Defendant, Beneficial Financial I Inc. ("Beneficial"); (2) Third-Party Defendant HSBC Finance Corporation ("HSBC Finance"); (3) Third-Party Defendant Assurant, Inc. ("Assurant"); and Third-Party Defendant American Security Insurance Company ("ASIC") (collectively "Movants").[1]

Movants seek to compel arbitration of the counterclaims and third-party claims asserted against them by Defendant Carolyn Cravens ("Ms. Cravens") and to stay all proceedings pending completion of the arbitration.[2] Ms. Cravens does not dispute the validity of the arbitration provision or that her claims fall within its scope. Instead, she contends Beneficial waived its right to arbitrate.

**I. Background**

On September 14, 2005, Billy Cravens, now deceased, and Carolyn Cravens executed: (1) a Loan Repayment and Security Agreement, whereby they borrowed $67,535.64 from Beneficial and agreed to repay such amount ("Loan Agreement"); and (2) a Mortgage, whereby the Cravens granted a mortgage to Beneficial and its successors for property located at 1412 N. Sandusky Ave., Tulsa, OK, 74115 ("Property"). The Loan Agreement gives Beneficial the following right to obtain insurance on the Property:

---

[1] On the same date Movants filed their Motion to Compel Arbitration, Third-Party Defendants HSBC North America Holdings, Inc. ("HSBC North America") and HSBC Holdings, LLC ("HSBC Holdings") filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Thus, these two entities do not seek to compel arbitration but instead argue this Court lacks personal jurisdiction over them.

[2] Although they do not move for arbitration of the foreclosure claim initiated by Beneficial, Movants do not object to the Court compelling arbitration of such claim along with Ms. Cravens' claims.

2

> Lender's Right to Place Hazard Insurance. You authorize us, at our option, to obtain coverage on the Property in an amount not greater than the outstanding balance of principal and interest on the loan or, if known to be less, the replacement value of the Property, in the event that you fail to maintain the required hazard insurance outlined above or fail to provide adequate proof of its existence.

(Mot. to Compel Arb., Ex. A.) The Loan Agreement also contains the following broadly worded Arbitration Rider:

> **ARBITRATION RIDER**
> Oklahoma
>
> This Arbitration Rider is signed as part of Your Agreement with Lender and is made a part of that Agreement. By signing this Arbitration Rider, you agree that either Lender or you may request that any claim, dispute, or controversy (whether based upon contract; tort, intentional or otherwise; constitution; statute; common law; or equity and whether pre-existing, present, or future), including initial claims, counter-claims, cross-claims, and third-party claims, arising from or relating to this Agreement or the relationships which result from this Agreement, including the validity or enforceability of this arbitration clause, any part thereof or the entire Agreement ("Claim"), shall be resolved, upon the election of you or us by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administration selected at the time the Claim is filed.
>
> . . .
>
> This Arbitration Rider is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16 ("the FAA").
>
> . . .
>
> No provision of nor the exercise of any rights under this Arbitration Rider shall limit the right of any party during the pendency of any Claim, to seek and use ancillary or preliminary remedies, judicial or otherwise, for the purpose of realizing upon, preserving, protecting, or foreclosing upon any property involved in any Claim or subject to the loan documents. The use of the courts shall not constitute a waiver of the right of any party, including the plaintiff, to submit any Claim to arbitration nor render inapplicable the compulsory arbitration provisions contained in this Arbitration Rider.

(*Id.*)

On January 17, 2008, after the Cravens fell behind on their payments, Beneficial accepted them into a "hardship program" that reduced their interest rate and fixed their monthly payment at $462.58. By July 2009, the Cravens were $392.28 behind in their payments and were making efforts to catch up. In September 2009, Beneficial notified the Cravens that their insurance policy had lapsed and that Beneficial had acquired "hazard insurance" on their home pursuant to the Loan Agreement, thereby increasing their monthly premium. The Cravens took steps to renew their homeowner's policy and informed Beneficial, but Beneficial did not cancel the lender-placed policy. The Cravens fell further behind in their payments. Ms. Cravens alleges:

> The Cravens remitted as much extra money as they could each month, but the additional lender-placed insurance fees made catching up on their mortgage payments impossible. Due to additional fees for having a past-due account on a daily simple interest mortgage, the Cravens continued to fall further behind as they paid the regular monthly payments of $462.58. According to Beneficial, the minimum amount due on the October 2009 statement was $1,423.11. In December 2009, January 2010 and March 2010, the Cravens paid amounts in addition to their regular monthly payments. In May 2010, Beneficial rejected the Cravens' regular $462.58 monthly payment because the amount was insufficient to bring the account current. The minimum amount due in May 2010 to bring the account current was $3,763.32. In June 2010, Beneficial again notified the Cravens of the necessity for lender-placed insurance. They were already covered and notified Beneficial of their existing, in-force policy. Despite having actual knowledge that their policy was unnecessary, Beneficial did not cancel the lender-placed policy. Moreover, this second lender-placed policy overlapped the dates and coverage of the previous lender-placed policy. The June, 2010 letter contained a critical accounting error which the Cravens brought to the attention of Beneficial: the letter erroneously stated the amount of the Cravens' existing mortgage payment as $532.15 – an amount that included the hazard policy from the previous year. The correct amount should have been $462.58: only principal and interest. Therefore, Beneficial stacked an insurance premium on top of an existing premium, bringing the new monthly payment amount to $608.65. Because the Cravens felt Beneficial was not listening to their concerns, they sought assistance from a local Community Action Project office. That office advised them to request arbitration, as specified in their mortgage agreement. On July 12, 2010, pursuant to paragraph 22 of the mortgage which incorporates an attached arbitration rider, the Cravens requested arbitration with Beneficial. Instead, on July 23, 2010 Beneficial filed a foreclosure action against them.

(Am. Countercl. ¶¶ 6-10.)

On July 12, 2010, the Cravens sent a letter to Beneficial's legal counsel, Shapiro & Cejda, stating that: (1) their payments changed without notice, causing them to be overdrawn on their checking account; (2) they called Beneficial and were told that had been removed from "hardship" status; (3) they were confused about why they had been removed from "hardship" status; and (4) Beneficial "[kept] adding more insurance on the house," despite documentation they sent in showing they had their own insurance. The Cravens concluded the letter by stating "[s]o all I see is to take it to Arbitration." (Resp. to Mot. to Compel Arbitration, Ex. A.) Ms. Cravens contends Beneficial did not respond to this letter. On July 23, 2010, Beneficial filed a foreclosure action on the Property in state court, to which the Cravens filed a pro se Answer. Beneficial failed to prosecute the foreclosure action, and the case was dismissed in April of 2011.

On December 31, 2013, William McMahon ("McMahon"), then-counsel for Ms. Cravens, sent a letter to the Oklahoma Attorney General's Office stating he had tried numerous times to contact Beneficial "regarding refinancing or modification" of the Cravens' Loan Agreement based upon the Cravens' disabilities. On February 12, 2014, McMahon sent a letter to counsel for Beneficial, stating that Ms. Cravens disputes the amounts allegedly owed, requesting a detailed payment history, and informing Beneficial that Mr. Cravens was deceased. On March 6, 2014, McMahon sent a letter to Lesli Bailey Peterson, an attorney at Shapiro & Cejda, stating: "If you will look at paragraph 22 of the mortgage . . ., you will see an arbitration rider has been incorporated by reference, which requires certain efforts prior to the filing of foreclosure. Please advise of your client's position regarding same." (Resp. to Mot. to Compel Arbitration, Ex. F.)

At this point, Ms. Cravens' current counsel, Deborah Reed ("Reed"), became involved. On June 17, 2014, Reed sent an email to Becky Burton ("Burton"), a legal assistant at Shapiro & Cejda, entitled "Request for Arbitration," which provides:

> Please find attached the letter from Mr. McMahon re: the arbitration rider in Ms. Cravens' mortgage. We are prepared to proceed with arbitration as we feel your client is at fault in this matter. I have documentation that clearly shows the accounting errors and bad faith dealings of Beneficial that led to this current situation. . . . As I mentioned on the phone, we are aware of federal case 2-11-cv-04074-JD pending in the Eastern District of Pennsylvania against Beneficial and other HSBC-owned companies. If our client were a resident of Pennsylvania, she would be a member of the plaintiff class. Our client will settle this matter in exchange for Beneficial's discharge of the debt and the clearing of this from her credit report. Otherwise, we are prepared to proceed with arbitration.

(*Id.*, Ex. G.) Burton responded to this email by letter dated June 23, 2014:

> I have reviewed your e-mail correspondence with Lesli Bailey Peterson. In response to said e-mail correspondence of June 17, 2014, wherein you included a copy of prior counsel's March 6, 2014 request for arbitration, upon our review of the original note and mortgage, there are no arbitration riders attached. Therefore, we will not agree to arbitration.

(*Id.*, Ex. H.)[3]

Two days later, on June 25, 2014, Beneficial filed a second foreclosure action on the Property ("Complaint") in state court alleging that "default has occurred in that the monthly payment due October 23, 2009 and thereafter has not been made as provided in the note and mortgage." (Compl. ¶ 6.) The Complaint was filed against Ms. Cravens, the heirs of Mr. Cravens, and other defendants who may have an interest in the Property.

Ms. Cravens removed the foreclosure action to this Court and filed a Counterclaim against Beneficial asserting claims for: (1) violation of the Real Estate Settlement Procedures Act

---

[3] Beneficial does not now dispute that the Loan Agreement contains the Arbitration Rider.

6

("RESPA"), 12 U.S.C. §§ 2601-2617, based on Beneficial's alleged receipt of kickbacks from lender-placed insurance providers; (2) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968, based on charging for unnecessary lender-placed insurance policies that cost 26% more than the policies purchased by Ms. Cravens; (3) insurance bad faith, based on the unnecessary insurance and stacking premiums and failing to agree to arbitration; (4) violation of the Oklahoma Consumer Protection Act, 15 O.S. §§ 751-765; (5) intentional infliction of emotional distress; (6) gross negligence; (7) fraud; and (8) unjust enrichment. (Am. Countercl., Doc. 20.) In a Third-Party Complaint, Ms. Cravens asserts identical claims against Beneficial's alleged parent corporations, HSBC Finance, HSBC North America, and HSBC Holdings, based on the doctrine of vicarious liability. (Third-Party Compl., Doc. 21.) Ms. Cravens also asserts identical third-party claims against the lender-placed insurance provider, ASIC, and its parent corporation, Assurant, based on ASIC's concerted conduct with Beneficial. (*Id.*)

## II.     Standard of Review

Movants' motion to compel arbitration was filed pursuant to the Federal Arbitration Act ("FAA"), which provides "that contractual agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA's purpose is "'to place an arbitration agreement upon the same footing as other contracts and to overturn the judiciary's longstanding refusal to enforce agreements to arbitrate.'" *Hill v. Ricoh Am. Corp.*, 603 F.3d 766, 771 (10th Cir. 2010) (quoting *Glass v. Kidder Peabody & Co., Inc.*, 114 F.3d 446, 451 (4th Cir.1997)). Section 3 of the FAA "obliges courts to stay litigation on matters that the parties have agreed to arbitrate," while Section

4 "authorizes a federal district court to compel arbitration when it would have jurisdiction over a suit on the underlying dispute." *Id.*

In cases where a non-movant concedes the validity of an arbitration agreement but argues that waiver occurred, a court must reach an equitable determination of whether waiver occurred. *Id.* at 773 (setting forth equitable principles that "guide courts in determining whether it is appropriate to deem that a party has waived its right to arbitration"). Due to the strong federal policy in favor of arbitration, the party asserting waiver bears a heavy burden of persuasion. *Id.* at 775. The Court has considered all evidence submitted by Ms. Cravens in deciding whether she has met this heavy burden.[4]

## III. Beneficial's Motion to Compel Arbitration

In this case, Ms. Cravens argues that Beneficial waived its right to arbitrate when it refused to submit to her arbitration demands and instead filed this action.[5] Like all contract rights, arbitration agreements can be waived. *Id.* at 772. Waiver can occur when a party intentionally relinquishes its arbitration right, such as when it refuses to participate in a formally initiated arbitration proceeding. *Id.* at 773 (explaining facts of Ninth Circuit case where company refused to participate in arbitration, employee filed district court action, corporation moved to compel arbitration, and corporation was found to have intentionally relinquished its arbitration right). This is the "narrow sense of waiver typically used in the criminal-law context." *Id.* at 773. However,

---

[4] Ms. Cravens attached evidence outside the pleadings to her response to the motion to compel arbitration – namely, the correspondence leading to this litigation. Movants have had an opportunity to respond to such evidence and do not appear to object to the Court's consideration of such evidence.

[5] Ms. Cravens does not argue that Beneficial waived the rights of the third-party defendants, and the Court's analysis is limited to whether Beneficial waived its own contractual right.

waiver is not limited to this type of "intentional relinquishment," and there is no set rule as to what constitutes waiver of the right to arbitrate. *Id.* at 774. Courts may consider the following non-exclusive factors:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

*Id.* at 772-73 (internal quotation marks omitted) (list not intended "to suggest a mechanical process in which each factor is assessed and the side with the greater number of favorable factors prevails").

Ms. Cravens' entire "waiver" argument consists of two sentences in her response brief:

> On June 23, 2014, Beneficial wrote the undersigned counsel a letter and stated, "…we will not agree to arbitration." See Exhibit "H", supra. Two days later, Beneficial filed its second foreclosure suit against Ms. Cravens. Ms. Cravens removed that action to this Court. Even though this suit has not progressed through months of litigation or involved lengthy discovery at this point, affirmatively stating that they will not agree to arbitration coupled with their almost immediate filing of the second foreclosure action constitutes a knowing waiver of Movants' contractual right to arbitration.

(Resp. to Mot. to Compel Arbitration 6.) Ms. Cravens has not specifically addressed the relevant factors in any manner. Nonetheless, the Court will address each factor in relation to the evidence presented by Ms. Cravens.

### A. Factor 1: Did Beneficial Take Actions Inconsistent with its Current Demand to Arbitrate the Counterclaims?

There are two possible actions by Beneficial that are inconsistent with its current demand for arbitration, and the Court will address each. First, and most obviously, Beneficial initiated this

action in a court of law, rather than demand arbitration under the Loan Agreement. However, any potential waiver flowing from that decision is foreclosed by the terms of the Loan Agreement. The Arbitration Rider expressly provides that "[n]o provision of . . . this Arbitration Rider shall limit the right of any party during the pendency of any Claim, to seek and use ancillary or preliminary remedies, judicial or otherwise, for the purpose of . . . foreclosing upon any property involved in any Claim or subject to the loan documents" and that "[t]he use of the courts shall not constitute a waiver of the right . . . to submit any Claim to arbitration nor render inapplicable the compulsory arbitration provisions contained in this Arbitration Rider." Thus, although Beneficial filed a lawsuit to foreclose on the Property, this may not be deemed a waiver of Beneficial's right to arbitrate Ms. Cravens' counterclaims. Such an outcome is prohibited by the terms of the agreement. There is nothing "inconsistent" about Beneficial filing a foreclosure action in court, but then demanding arbitration of counterclaims arising from that foreclosure action.

Second, Beneficial rejected Ms. Cravens' written demand for arbitration, stating that it would not submit to arbitration because the Loan Agreement did not contain an arbitration rider. This statement by Burton, a legal assistant, was either a mistake or intentionally misleading, as all parties now agree that the Loan Agreement contains an Arbitration Rider. Further, Ms. Cravens' demand for arbitration was sufficient to encompass her currently pending counterclaims. The demand letter referenced issues beyond simple accounting errors or other problems that could be construed as within the "foreclosure" exception to the arbitration rule. The demand letter accused Beneficial of bad-faith practices and referenced a class-action lawsuit against Beneficial and other HSBC corporations. Thus, refusal to submit to arbitration of Ms. Cravens' counterclaims at that juncture in time, and instead wait until such claims were asserted here, is inconsistent with its current demand

for arbitration. Courts have held, however, that this type of informal rejection of a demand for arbitration — occurring prior to any formal initiation of arbitration proceedings – is just one factor to consider in a waiver analysis, rather than the type of "intentional relinquishment" or repudiation that may warrant a finding of waiver without regard to other equitable factors. *See Tormey v. Morning Dove, LLC*, No. CIV-23-1328-D, 2013 WL 1450513, at *6 (W.D. Okla. Apr. 9, 2013) (finding no waiver or repudiation where defendant refused to plaintiff's request to submit names of arbitrators, forced plaintiff to file suit, and then filed a motion to compel) (reasoning in part that plaintiff "had not formally initiated an arbitration proceeding"); *cf. Brown v. Dillard's Inc.*, 430 F.3d 1004, 1008-09 (9th Cir. 2005) (finding that employer had waived its right to arbitrate where employee had filed formal notice of intent to arbitrate and paid her half of arbitration fee but employer refused to arbitrate for over two months before filing suit). Accordingly, the Court continues to examine the other factors

### B. Factors 2 & 3: Did Beneficial Delay in Seeking Arbitration of the Counterclaims?

Beneficial did not unreasonably delay in seeking arbitration of the counterclaims, as it moved to compel arbitration approximately three months after the counterclaims were filed. Given the number of parties involved and that the motion also addressed the non-signatory issue, this was a reasonable amount of time.

### C. Factor 5: Did Beneficial Take Advantage of Judicial Discovery?[6]

Discovery has not begun, and Beneficial has not attempted to use this Court's discovery process prior to seeking arbitration. Nor has Beneficial otherwise attempted to manipulate the

---

[6] The fourth factor, whether the party seeking arbitration filed a counterclaim without seeking a stay, is not relevant in this case.

judicial process. *See Hill*, 603 F.3d at 773 (emphasizing that "[a]n important consideration in assessing waiver is whether the party now seeking arbitration is improperly manipulating the judicial process"). Beneficial exercised a contractual right to file this foreclosure action and then exercised another contractual right to compel arbitration of the counterclaims. Further, Beneficial has agreed to resolve all claims – including the foreclosure action – in arbitration. Thus, Beneficial is not attempting to hide the allegations in the counterclaims from the forum deciding the foreclosure issue.

### D. Factor 6: Did Any Delay Affect, Mislead, or Prejudice Ms. Cravens?

Ms. Cravens has failed to articulate or demonstrate any prejudice flowing from they delay caused by Beneficial's original refusal to arbitrate. The only prejudice she suffered was being forced to participate in this litigation for a period of time, rather than any substantive prejudice to her claims. Prejudice is a key factor in the waiver analysis, and Ms. Cravens has shown none.

### E. Conclusion

Considering the relevant factors, the Court concludes Ms. Cravens has failed to meet her heavy burden of demonstrating that Beneficial waived its right to arbitrate the counterclaims. Although it sent a mistaken or intentionally misleading letter rejecting an informal demand for arbitration, the Court finds that it is not sufficient to constitute repudiation or intentional relinquishment of its right. All other factors weigh against a finding of waiver, as there was no unreasonable delay, manipulation of the judicial process, or prejudice flowing to Ms. Cravens. Beneficial's motion to compel arbitration of Ms. Cravens' counterclaims is therefore granted.

In the interest of judicial economy, the Court also deems it proper to compel arbitration of Beneficial's foreclosure claim. As explained above, Beneficial does not object to compelling

arbitration of its claim so that all issues between Beneficial and Ms. Cravens will be decided in one forum.

IV.     **Non-Signatories' Motion to Compel Arbitration**

ASIC, Assurant, and HSBC Finance – non-signatories to the Loan Agreement – move to compel arbitration of Ms. Cravens' third-party claims asserted against them. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Tech. v. Comm. Workers of Am.*, 475 U.S. 643, 648 (1986) (citation and internal quotation marks omitted). However, arbitration agreements may be enforced against or in favor of nonparties under state contract law principles such as assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver, and estoppel. *See Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 708 (10th Cir. 2011). With respect to estoppel, the principle relied upon by the non-signatories seeking arbitration in this case, the Tenth Circuit has explained:

> Over the last several decades, the federal courts have developed a body of law concerning the application of estoppel to permit a nonsignatory to compel a signatory to arbitrate. The circuits have not uniformly articulated the standards for application of estoppel, but their formulations have contained common elements. . . . The Eleventh Circuit [has] held that estoppel will permit a nonsignatory to compel arbitration in two circumstances. The first is when the signatory must rely on the terms of the written agreement in asserting [its] claims against the nonsignatory. The second is when the signatory alleges substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

*Id.*; *see also Cinocca v. Orcrist, Inc.*, 60 P.3d 1072, 1075 (Okla. Civ. App. 2002) (applying same test to compel arbitration with non-signatory under equitable estoppel theory).

In the second situation involving collusion or conspiracy between a signatory and non-signatory, the claims against the non-signatory must still be "founded in and intertwined with" the

13

obligations under the contract containing the arbitration clause. *Lenox*, 449 F. App'x at 709. This is because the "plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory defendant is . . . the sina qua non" of application of estoppel. *Id.*[7]

For reasons explained below, the Court concludes that all claims asserted against the non-signatories either (1) arise from the Loan Agreement and/or (2) contain allegations of "substantially interdependent and concerted misconduct" by Beneficial and the non-signatories that is founded in and intertwined with the Loan Agreement. The Court will separately address HSBC Finance (Beneficial's parent corporation) and ASIC/Assurant (Beneficial's alleged co-conspirator).

### A. HSBC Finance - Beneficial's Parent Corporation

With respect to HSBC Finance, Ms. Cravens seeks to hold it liable for Beneficial's actions under a vicarious liability theory rather than for any actions taken specifically by HSBC Finance. (Third-Party Compl. ¶ 88 ("Because of their full knowledge and cooperation, the parent companies are vicariously liable for the actions of the subsidiaries under the theory of respondeat superior. Their full knowledge of and support of any of the actions of their subsidiaries makes them complicit in each of the above counts of injustice against C. Cravens.").) Courts routinely find estoppel appropriate when a plaintiff's allegations against a non-signatory/parent corporation are indistinguishable and based upon the same facts. *See Int'l Paper Co. v. Schwabedissen Mashinent & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000) (collecting cases). As in those cases, it would be inequitable for Ms. Cravens to hold HSBC Finance vicariously liable for Beneficial's wrongdoing

---

[7] In her response, Ms. Cravens did not address the estoppel argument or expressly object to compelling the non-signatories to arbitration. She simply argued that Beneficial waived its right to arbitrate. Therefore, the Court was without the benefit of argument from Ms. Cravens regarding the issues discussed below.

in relation to the Loan Agreement but not permit HSBC Finance to exercise the right to compel arbitration under the Loan Agreement.

### B. ASIC/Assurant - Alleged Co-Conspirator

Ms. Cravens alleges that ASIC entered into a conspiracy with Beneficial, whereby Beneficial force-placed insurance provided by ASIC on the Property at an inflated cost to Ms. Cravens. She alleges that Beneficial and ASIC engaged in this scheme at times when Ms. Cravens was providing her own insurance, in violation of the Loan Agreement. She also seeks to hold Assurant vicariously liable for ASIC's actions. The allegations against ASIC/Assurant arise directly from the Loan Agreement, in substantial part, because the Loan Agreement dictates when and under what circumstances a lender may force-place insurance. At a minimum, Ms. Cravens alleges "substantially interdependent and concerted misconduct" by ASIC and Beneficial that is wholly dependent on and intertwined with the Loan Agreements. All claims against ASIC – which includes statutory violations, torts, and unjust enrichment – are premised upon the contractual duties and obligations flowing to Ms. Cravens by virtue of the Loan Agreement. The Court agrees with its sister court in Colorado, which held that ASIC/Assurant could enforce the right to arbitration under an estoppel theory in a case presenting nearly identical facts and claims as those presented here. *See Weller v. HSBC Mortg. Servcs., Inc.*, 971 F. Supp. 2d 1072, 1083 (D. Colo. 2013) (claims for breach of fiduciary duty, unjust enrichment, and RICO were all premised upon and intertwined with the underlying mortgage documents containing the arbitration provision).

## V. Conclusion

The Joint Motion to Compel Arbitration and Stay Certain Proceedings (Doc. 41) is GRANTED in its entirety. Ms. Cravens' counterclaims against Beneficial and third-party claims

against ASIC, Assurant, and HSBC Finance are compelled to arbitration. In the interest of judicial economy and based upon Beneficial's non-objection, Beneficial's claim for foreclosure is also compelled to arbitration. Pursuant to 9 U.S.C. § 3, the Court hereby stays litigation of all claims submitted to arbitration.

The only remaining claims are Ms. Craven's third-party claims against HSBC Holdings and HSBC North America. These entities did not move to compel arbitration but instead moved to dismiss based upon lack of subject matter jurisdiction. The Court finds it is in the interest of judicial economy to delay deciding these jurisdictional questions pending the outcome of arbitration, which may render Ms. Cravens' third-party claims against these entities moot. Based upon the stay of all proceedings, the Court strikes all currently pending motions. Such motions may be re-filed once the stay is lifted.[8]

The parties are ORDERED to file a Joint Status Report within fourteen days of resolution of arbitration or one year from the date of this Order, whichever is sooner.

**IT IS SO ORDERED** this 17th day of August, 2015.

**HONORABLE TERENCE C. KERN**
**United States District Judge**

---

[8] In striking the jurisdictional motion, the Court is not making any determination as to whether it has jurisdiction over HSBC Holdings or HSBC North America.